NO. 24-1393

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Sharmarke Abdi,

*Appellant*,

vs.

Hennepin County,

*Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

**BRIEF OF APPELLEE HENNEPIN COUNTY**

Bethany M. Belle Isle (#0399161)
Assistant Hennepin County Attorney
A-2000 Government Center
300 South Sixth Street
Minneapolis, MN 55487
Telephone: (612) 540-9050
Beth.belleisle@hennepin.us

*Attorney for Appellee*

## SUMMARY OF THE CASE

This is an appeal of the dismissal of a pro se Complaint asserting discrimination claims under the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The pro se Appellant, Sharmarke Abdi ("Abdi"), remains fully employed with Appellee, Hennepin County ("the County"), and he has not suffered any actionable adverse employment action. Furthermore, he failed to exhaust his administrative remedies with respect to alleged discrete acts which occurred several months after he filed his Equal Employment Opportunity Commission (EEOC) charge. Accordingly, the District Court properly dismissed all claims under Fed. R. Civ. P. 12(b)(6). Thereafter, Abdi filed a timely notice of appeal.

**Request for Oral Argument**

The County does not believe that oral argument is necessary. However, if the Court decides to hold oral argument, the County respectfully requests 10 minutes.

Appellate Case: 24-1393    Page: 2    Date Filed: 07/10/2024 Entry ID: 5412174

# TABLE OF CONTENTS

SUMMARY OF THE CASE…………………………………………………...ii

REQUEST FOR ORAL ARGUMENT……………………..………………......ii

TABLE OF AUTHORITIES…………………………………………………...iv

STATEMENT OF THE ISSUES……………………………...…………….…1

STATEMENT OF THE CASE……………………………………………………2

SUMMARY OF THE ARGUMENT…………………………………………...8

ARGUMENT….…………………………………………………………….9

CONCLUSION……………………………………………………………......26

CERTIFICATE OF COMPLIANCE……………...………………….………28

CERTIFICATE OF SERVICE……………..…………………………………..29

Appellate Case: 24-1393    Page: 3    Date Filed: 07/10/2024 Entry ID: 5412174

# TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys. Inc*., 988 F.2d 1157
(Fed. Cir. 1993).......................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)) .........................9

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014)..............................21

*Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857 (7th
Cir.1985)..................................................................................................15

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) ................10

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)…..................................... 1, 8, 18, 20, 21, 22, 23, 25

*Carlsen v. GameStop*, Inc., 833 F.3d 903 (8th Cir. 2016)............... 10, 22

*Cossette v. Minn. Power & Light*, 188 F.3d 964 (8th Cir. 1999) ......... 1, 13, 18

*Dick v. Dickinson State University*, 826 F.3d 1054 (8th Cir. 2016)....... 1, 14, 16, 17

*Fenney v. Dakota, Minn. & Eastern R. Co.*, 327 F.3d 707 (8th Cir. 2003)..... 12, 13,

*Gardea v. JBS USA, LLC*, 915 F.3d 537 (8th Cir. 2019)......................1, 13

*Gregory v. Dillard's, Inc*., 565 F.3d 464, (8th Cir. 2009) .......................10

*Henson v. Union Pac. R.R. Co*., 3 F.4th 1075 (8th Cir. 2021) ..................... 1, 16, 17

iv

*Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480 (8th Cir. 2007) ...............................11

*Hutson v. Wells Dairy, Inc.*, 578 F.3d 823 (8th Cir. 2009) ......................................16

*Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)......................................11

*Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924 (8th Cir. 2024) .................25

*Jennings v. Stephens*, 574 U.S. 271 (2015) ...........................................................11

*Johnson v. Securitas Sec. Services USA, Inc.*, 769 F.3d 605 (8th Cir. 2014)......2, 25

*Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624 (8th Cir. 2016) ............................26

*K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017)............................9, 10

*Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603 (8th Cir. 2018)...........15

*Mems v. City of St. Paul, Dept. of Fire & Safety Services*, 327 F.3d 771
(8th Cir. 2003) ......................................................................................................17

*Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452 (8th Cir. 2022) ......................11

*Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911,
(8th Cir. 2018) .................................................................................................. 13, 16

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024) .............. 2, 8, 12, 14, 23, 24, 26

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..................................16

*Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081 (8th Cir. 2012)................................9

v

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) ....................................11

*Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981)...................................................9

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ....................................10

*Robinson v. Am. Red Cross*, 753 F.3d 749 (8th Cir. 2014) ..................................2, 25

Sellers v. Deere & Co., 791 F.3d 938 (2015) ..........................................................27

*Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899 (8th Cir. 2015)......... 12, 13

*Shannon v. Ford Motor Co.*, 72 F.3d 678 (8th Cir. 1996)........................................15

*Stone v. Harry*, 364 F.3d 912 (8th Cir. 2004) ...........................................................10

*Turner v. Gonzales*, 421 F.3d 688 (8th Cir. 2005).................................................2, 23

*Wartman v. United Food & Commercial Workers Local 653*, F.3d 638
(8th Cir. 2017)...........................................................................................................9

*Weger v. City of Ladue*, 500 F.3d 710 (8th Cir. 2007) ........................................1, 22

*Williams v. Little Rock Mun. Water Works*, 21 F.3d 218 (8th Cir. 1994) ................15

*Wilson v. Miller*, 821 F.3d 963 (8th Cir. 2016) ....................................................1, 19

*Young v. Builders Steel Co.*, 754 F.3d 573 (8th Cir. 2014) .....................................25

*Young v. City of St. Charles, Mo.*, 244 F.3d 623 (8th Cir. 2001) ............................10

Appellate Case: 24-1393    Page: 6    Date Filed: 07/10/2024 Entry ID: 5412174

**Statutes**

Minn. Stat. 383B.38, subd. 1 ................................................................4, 20

Minn.Stat.383B.27, subd. 15 ....................................................................20

**Rules**

FED. R. CIV. P. 1 .....................................................................................23

FED. R. CIV. P. 12(b)(6)........................................................................ 1, 7, 9

FED. R. CIV. P. 61 ...................................................................................22

Appellate Case: 24-1393     Page: 7     Date Filed: 07/10/2024 Entry ID: 5412174

## <u>STATEMENT OF ISSUES</u>

I.   Did the District Court err in holding that Abdi failed to plausibly state a claim on which relief can be granted and failed to exhaust administrative remedies with respect to his ADA failure to accommodate claim?

<u>ANSWER TO ISSUE 1</u>: The District Court did not err in dismissing.

<u>Most Apposite Authority</u>:

- *Gardea v. JBS USA, LLC*, 915 F.3d 537 (8th Cir. 2019).

- *Dick v. Dickinson State Univ.*, 826 F.3d 1054 (8th Cir. 2016).

- *Henson v. Union Pac. R.R. Co*., 3 F.4th 1075, 1082 (8th Cir. 2021).

- Fed. R. Civ. P. 12(b)(6).

II.   Did the District Court err in holding that Abdi failed to plead a plausible ADA retaliation claim?

<u>ANSWER TO ISSUE 2</u>: The District Court did not err in dismissing.

<u>Most Apposite Authority</u>:

- *Cossette v. Minn. Power & Light*, 188 F.3d 964 (8th Cir. 1999).

- *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

- *Wilson v. Miller*, 821 F.3d 963 (8th Cir. 2016).

- *See Weger v. City of Ladue*, 500 F.3d 710 (8th Cir. 2007).

1

III.    Did the District Court err in holding that Abdi failed to plead a plausible Title VII race discrimination claim?

ANSWER TO ISSUE 3: The District Court did not err in dismissing.

Most Apposite Authority:

- *Robinson v. Am. Red Cross*, 753 F.3d 749 (8th Cir. 2014).

- *Turner v. Gonzales*, 421 F.3d 688 (8th Cir. 2005).

- *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024).

- *Johnson v. Securitas Sec. Services USA, Inc*., 769 F.3d 605 (8th Cir. 2014).

## STATEMENT OF THE CASE

**Abdi's employment with the County**

On January 27, 2014, Abdi began working for the County as a Human Services Representative in the County's Human Services Department. R. Doc. 1-1, 4(¶ 9). Abdi has as physical disability that requires him to use a wheelchair in his work. R. Doc. 11, 2(¶ 2). He was promoted twice within the Human Services Department. First, in 2017, he was promoted to a Human Services Representative Senior. *Id.* Second, on October 11, 2021, the County promoted Abdi to Senior Social Worker. R. Doc 1-1, 6(¶ 29). This second promotion came with transferring to a new unit, with new managers and supervisors. R. Doc. 1-1, 6(¶¶ 29-33). Abdi does not allege that either promotion was involuntary. *Id.*

2

**Abdi's request for a stand-up desk**

In November of 2020, Abdi requested a stand-up/adjustable height desk to conduct his duties remotely from home during the COVID-19 pandemic. R. Doc. 1-1, 4(¶ 11). He alleges that this accommodation would help him work more efficiently, but he does not allege that the accommodation was medically necessary. R. Doc. 1-1, 4(¶¶ 11-13). The request was initially denied on January 22, 2021. *Id.* at ¶ 12. However, as the pandemic dragged on, his accommodation request for a stand-up desk at his home was later *granted*. R. Doc. 13, 4. Abdi does not allege any facts demonstrating that this temporary delay in granting his accommodation request interfered with his ability to do his work. R. Doc. 1-1, 4(¶¶ 11-14).

**Performance review**

In March of 2021, Abdi received a performance evaluation, which included some comments about his interpersonal communication style at work. R. Doc. 1-1, 5(¶ 21). Abdi does not plead that the overall tenor of the performance evaluation was negative or that he did not receive the pay increase associated with a good annual performance review. *Id.* Abdi was also the subject of an employment investigation on April 1, 2021. *Id.* at ¶¶ 15, 22. Abdi acknowledges that the investigation resulted in "acquittal" and that he received an informal "coaching." *Id.* at ¶ 25. However, he does not allege that he was subject to any formal discipline or other adverse action impacting the terms or conditions of his employment.

3

**Charge filed with the EEOC**

Abdi filed a Charge of Discrimination with the EEOC on August 2, 2021, alleging he was denied reasonable accommodation and retaliated against for seeking a stand up desk as an accommodation, in violation of the Americans with Disabilities Act of 1990, as amended, and that he was discriminated against based on his race in violation of Title VII of the Civil Rights Act of 1964, as amended. R. Doc. 1-2, 1. The charge form notes that discrimination took place between March 1, 2020, and July 30, 2021. *Id.* The continuing action box is checked. *Id.* The charge form indicates discrimination was based on race, disability, and retaliation. *Id.* Abdi did not amend his original charge to include discrete acts that occurred after his filing of the charge or after his October 2021 promotion. *Id.*

**Abdi receives a promotion**

Importantly, despite the performance review and investigation in early 2021, the County nonetheless *promoted* Abdi in October 2021, just two months after he filed his EEOC charge, to a Senior Social Worker, demonstrating that neither the review nor the investigation negatively impacted his promotional opportunities.

Abdi states he had a quiet eight months after filing his EEOC charge. R. Doc. 13, 7. On March 29, 2022, Abdi passed probation in the Senior Social Worker role, giving him permanent tenure rights to that position. R. Doc. 1-1, 6(¶ 30) *See* Minn. Stat. 383B.38, subd. 1 ("No permanent employee in the classified service shall be

suspended, demoted, or discharged except for just cause."). Abdi continues to be fully employed at the County as a Senior Social Worker. R. Doc. 1-1, 4(¶ 9).

**Alleged wage loss**

Abdi claims that, despite being promoted in 2021, he suffered a $4,000 annual income loss. *Id*. However, he does not explain *how* this alleged wage loss is tied to an adverse employment action. To the contrary, Abdi claims he incurred this alleged loss when he voluntarily accepted the promotion to Senior Social Worker.

Abdi voluntarily holds a second part time job in a different work unit of the County. R. Doc. 13, 7. It appears that Abdi attributes the alleged $4,000 annual income loss to the impact his promotion in his primary job had on the hours he was able to work in his second job. R. Doc. 13, 7.

**Alleged discrete employment acts occurring outside the ambit of the EEOC charge**

In April of 2022, Abdi alleges his new supervisor learned that Abdi uses a wheelchair. R. Doc. 1-1, 6(¶ 32). Abdi's job at the time required that he sometimes go into clients' homes, which are not always "barrier free settings" or ADA accessible. App. Br. 9. When managers learned that Abdi was not physically able to do all of the essential duties of his job, he was accommodated with a lateral transfer to a new Senior Social Worker role in the County's 911 dispatch office on August 29, 2022, which did not require entry into clients' homes that may not be ADA

accessible. R. Doc, 1-1, 7(¶¶ 36, 44). Abdi does not claim that this transfer resulted in any loss of pay or benefits, or that it was a demotion. *Id.* at ¶ 44.

Abdi claimed that his new worksite at the 911 dispatch office was not ADA accessible. R. Doc. 1-1, 7-8(¶ 44). Abdi requested that his new office be made ADA accessible with door push buttons and bathroom modifications. R. Doc. 1-1, 8(¶46). The County spent *$90,000* to make these modifications as an accommodation. *Id.* While the modifications to the worksite were being made, Abdi was reasonably accommodated with a temporary worksite that was ADA accessible at the County's South Human Services Hub. *Id.* at ¶ 45.

On October 5, 2022, Abdi alleges he requested another accommodation to change his hours due to difficulty parking outdoors during snow months. *Id.* at ¶ 47. He states this request was denied on October 7, 2022. *Id.* at ¶ 49. Abdi also alleges that both a white woman social worker and a black woman social worker were allowed to work his preferred shift or transfer into certain roles while he was denied a change in shift or a transfer. *Id.* at ¶ 47-53.

**EEOC issues Notice of Right to Sue**

On February 10, 2023, the EEOC issued a charge determination letter notifying Abdi and the County that the EEOC would not be proceeding further with its investigation and that it made no determination about whether further

investigation would establish violations of statute. R. Doc. 1-3, 1. The charge determination letter included a notice of right to sue. *Id.*

**Commencement of lawsuit**

Abdi timely filed a complaint in the U.S. District Court for the District of Minnesota on May 5, 2023, however, he included new allegations that were not part of his EEOC charge. R. Doc. 1-1, 1-11. He alleges that the County failed to provide reasonable workplace accommodations in violation of the ADA; engaged in retaliation against Abdi for asserting his ADA rights; and engaged in race discrimination in violation of Title VII. The County moved to dismiss under FED. R. CIV. P. 12(b)(6) because Abdi failed to plead sufficient facts to state an ADA and Title VII claim, and because he failed to exhaust administrative remedies with regard to the parts of his ADA claim that were not included within the scope of the EEOC charge. On January 25, 2024, the District Court granted the motion and dismissed Abdi's lawsuit in its entirety because (1) Abdi failed to plausibly plead his ADA failure to accommodate claim, (2) Abdi failed to plausibly plead his ADA retaliation claim, (3) Abdi failed to plausibly plead his Title VII race discrimination claim, and (4) Abdi failed to exhaust administrative remedies with regard to parts of his ADA failure to accommodate claims. Thereafter, Abdi timely filed a notice of appeal.

7

## SUMMARY OF ARGUMENT

The District Court's dismissal should be affirmed because Abdi's claims lack plausible support. With respect to his failure to accommodate claim, according to Abdi himself, he *was* accommodated with a stand-up desk that was the basis of his EEOC charge, albeit the granting of the accommodation was delayed. R. Doc. 13, 4. Abdi alleges no actionable harm stemming from the delay in receiving this accommodation. In addition, Abdi failed to exhaust his administrative remedies with respect to the alleged denial of accommodation that occurred in 2022, several months after he filed his EEOC charge. Accordingly, the District Court properly dismissed the ADA failure to accommodate claim in its entirety.

As to the ADA retaliation claim, the Complaint does not contain plausible support for an adverse action under the *Burlington Northern* standard because none of the actions alleged in the Complaint might have dissuaded a reasonable worker from making a discrimination complaint. Similarly, Abdi's Title VII race discrimination claim fails even when applying the new standard of harm outlined in the recent U.S. Supreme Court *Muldrow* decision. Although the District Court did not apply the *Burlington Northern* and *Muldrow* legal standards, it still came to the right conclusion based on the record. Remand is not proper when, as here, the record permits only one resolution. As a result, this Court should affirm the dismissal of all claims.

8

## **ARGUMENT**

### I.    **Motion to Dismiss Standard of Review.**

This Court reviews the District Court's grant of a Rule 12(b)(6) motion *de novo* while accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. See *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981); s*ee also Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys. Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993) (stating rule 12(b)(6) motion allows "the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity."). To survive a rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wartman v. United Food & Commercial Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017) (quotation omitted). In examining a complaint, a court does not have to accept as true conclusory allegations or "threadbare recitals of the elements of a cause of action." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "To avoid dismissal, a complaint must allege facts sufficient to state a

claim as a matter of law and not merely legal conclusions." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001).

Although courts liberally construe pro se complaints, pro se litigants are not excused from alleging sufficient facts to state a claim for relief. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). As the Supreme Court has stressed, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). A court should dismiss a complaint when, construing all facts in the light most favorable to the plaintiff, the plaintiff cannot prove any set of facts that support a legal claim. *K.T.*, 865 F.3d at 1057.

This Court may affirm a District Court's dismissal, even if the District Court used the wrong legal lens to come to the correct conclusion. "[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982). This Court "may affirm a judgment on any ground supported by the record . . . ." *Carlsen v. GameStop*, Inc., 833 F.3d 903, 910 (8th

10

Cir. 2016). The Supreme Court has noted, albeit in other circumstances, that the concept of judicial economy is served by "preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). "Federal appellate courts, [do] not review lower courts' opinions, but their *judgments*." *Jennings v. Stephens*, 574 U.S. 271, 277 (2015) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

## II. The District Court properly dismissed Abdi's ADA failure to accommodate claim.

Abdi's ADA failure to accommodate claim was properly dismissed by the District Court because Abdi failed to plausibly plead an actionable claim and failed to exhaust his administrative remedies with regard to allegations outside of the ambit of his EEOC charge. Accordingly, this Court should affirm the District Court's dismissal of Abdi's failure to accommodate claim.

### a. Abdi failed to plead a plausible adverse employment action.

"To make a prima facie case for a failure to accommodate under the ADA, an employee must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to his disability." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 456 (8th Cir. 2022) (citing *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007)). This Court has held that an adverse employment action under the ADA

11

is "one that causes a material change in the terms or conditions of employment." *Fenney v. Dakota, Minn. & Eastern R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Id*. at 717. In the context of Title VII discrimination claims, the U.S. Supreme Court reiterated that there must be "*some harm* respecting an identifiable term or condition of employment" to state a viable claim. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) (emphasis added) (interpreting Title VII's parallel provision prohibiting discrimination in employment).

To determine whether an accommodation for an employee is necessary, "and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Schaffhauser v. United Parcel Serv., Inc*., 794 F.3d 899, 906 (8th Cir. 2015) (citation omitted). To make a showing that the employer did not engage in the interactive process, the employee must show "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (citation omitted).

Here, Abdi has pled no facts that show that the County did not make a good faith effort to assist him in seeking accommodations or that he suffered any

actionable harm. In fact, he concedes that he did eventually receive the stand-up desk that he requested. R. Doc. 13, 4. Amici argue that a denial of accommodation, on its own, meets the ADA standard for an adverse action. Brief for U.S. Department of Justice, et al. as Amici Curiae Supporting Appellant (No. 24-1393). However, there is no dispute that Abdi *was* accommodated with a standup desk, and he pleads no facts that the delay in receiving this accommodation caused any harm with respect to the terms or conditions of his employment. *See generally* R. Doc. 1-1, 1-11. Abdi conceded in his opposition memorandum to the District Court, that as a result of the interactive process and the appeal process within it, he was accommodated after he "patiently waited months." R. Doc. 13, 4. Abdi and his amici appear to be asserting that the delay in receiving an accommodation, on its own, is sufficient to state a failure to accommodate claim. However, this Court has repeatedly held that there must be *some* showing of harm to state an actionable ADA claim. *See, e.g.*, *Gardea v. JBS USA, LLC*, 915 F.3d 537, 541 (8th Cir. 2019) (stating that a prima facie case of failure to accommodate under the ADA requires an adverse employment action); *e.g.*, *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 923 (8th Cir. 2018) ; *e.g.*, *Schaffhauser*, 794 F.3d at 905 ; *e.g.*, *Fenney*, 327 F.3d at 717 ; *see also Cossette v. Minn. Power & Light*, 188 F.3d 964, 970 (8th Cir. 1999) (holding that plaintiff must show that the employer's violation of the ADA prohibition on medical inquiries "caused some sort of tangible injury"). Indeed, the U.S. Supreme Court

13

recently held that, in the context of a Title VII race discrimination claim, there must be a showing of "some harm" that caused a "'disadvantageous' change in an employment term or condition." *Muldrow*, 144 S. Ct. at 974.

There are no facts alleged here plausibly showing that Abdi suffered harm that caused a disadvantageous change to the terms and conditions of his employment. The opposite is true – he was promoted and approved for accommodations. There is no allegation that the delay in receiving a standup desk caused any actionable harm with respect to the terms and conditions of his employment. Abdi does not allege any facts indicating why or how his disability – being "confined in [a] wheelchair" – made it necessary to have a *standup* desk to perform essential job functions, but the County providing him with one anyway. *See Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) ("A reasonable accommodation is one which enables a[n] individual with a disability to perform the essential functions of the position."). Accordingly, there is no plausible support for Abdi's claim that he was subject to an adverse action because of his disability.

As a result, the District Court correctly concluded that "Abdi eventually received the stand-up desk he requested" and did not suffer an adverse employment action. R. Doc. 35, 1. The District Court's analysis yielded a correct result, and it did not err when dismissing Abdi's failure to accommodate claim.

**b. Abdi failed to exhaust his administrative remedies with respect to the new allegations that occurred in 2022.**

Prior to bringing ADA claims in federal court, Abdi was required to first exhaust his administrative remedies by filing a timely discrimination charge with the EEOC with respect to each discrete adverse employment action. *See Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 608 (8th Cir. 2018). While a court may liberally construe an administrative charge for these purposes, "there is a difference between liberally reading a claim which 'lacks specificity,' *ibid.*, and inventing, *ex nihilo*, a claim which was simply not made." *Shannon v. Ford Motor Co*., 72 F.3d 678, 685 (8th Cir. 1996). Courts carefully examine the EEOC charging documents to assess whether they sufficiently put the employer on notice of the discrimination of which the plaintiff is complaining. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). This is because "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. . . ." *Id.* (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir.1985)).

Here, Abdi's EEOC charge notes that discrimination took place between March 1, 2020 and July 30, 2021. R. Doc. 1-2, 1. The charge form indicates discrimination was based on race, disability, and retaliation. *Id.* Abdi did not amend his original charge to include alleged discrete acts that occurred after he filed his

15

charge. *Id.* The only allegation in Abdi's Complaint for failure to accommodate that occurred between March 1, 2020 and July 30, 2021 is the allegation about the County's failure to reasonably accommodate Abdi with a stand-up desk. R. Doc. 1-1, 4(¶ 12).

Although the continuing action box *is* checked, the Eighth Circuit has held that an accommodation denial is a "discrete act," not a continuing violation. *Dick* , 826 F.3d at 1059. This Court has also stated that employment events like failure to promote, denials of transfer, refusal to hire, and termination are discrete acts and not continuing violations. *See Hutson v. Wells Dairy, Inc*., 578 F.3d 823, 826 (8th Cir. 2009) (quotations omitted). This is because these types of employment events are "easily identifiable" with clear beginnings and ends. *See Moses* , 894 F.3d at 920 . A failure to accommodate claim is similar to these kinds of discrete acts, there is a clear beginning and end, and thus a plaintiff must exhaust administrative remedies for each alleged denial of accommodation. Merely checking the "continuing violation box" on the EEOC charge form is not sufficient to exhaust administrative remedies with respect to discrete acts. *Henson v. Union Pac. R.R. Co*., 3 F.4th 1075, 1082 (8th Cir. 2021).

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Mems v. City of St. Paul, Dept. of Fire*

16

*& Safety Services*, 327 F.3d 771, 786 (8th Cir. 2003) (noting that discrete acts cannot be used to revive pre-limitations acts because they are separate and distinct unlawful employment practices). A continuing violation must also be "reasonably related" to the underlying charged claims and must "grow out" of the charge of discrimination. *See Henson,* 3 F.4th at 1080.

Here, the District Court did not err when it dismissed Abdi's ADA failure to accommodate claim based on alleged discrete acts that occurred after July 30, 2021. Abdi pleads no facts showing that the later allegations are reasonably related to or grow out of the initial denial of his request for a stand-up desk. Abdi admits that after he filed his EEOC charge he had a quiet eight months. R. Doc. 13, 7. He was also promoted and transferred to another unit on October 11, 2021, with new managers and supervisors after he filed his initial charge. R. Doc. 1-1, 6(¶ 29). These intervening events, which occurred several months after the charge was filed, sever any causal relationship the events noted in his underlying EEOC charge might have to the new allegations alleged in the Complaint. Because of the above, Abdi failed to exhaust his administrative remedies with regard to alleged denial of accommodation that occurred outside of the underlying charge period.

Appellate Case: 24-1393    Page: 24    Date Filed: 07/10/2024 Entry ID: 5412174

## III. The District Court did not err when it dismissed Abdi's ADA retaliation claim.

This Court has held that "[r]etaliation claims under the ADA are analyzed identically to those brought under Title VII." *Cossette,* 188 F.3d at 972. In *Burlington Northern*, the question before the U.S. Supreme Court was what constitutes an "adverse employment action" under Title VII's anti-retaliation provision. *See generally Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The Court held, "[i]n our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68 (citation and internal quotation marks omitted). The Court then made several important explanatory points. The Court first noted that "it is important to separate significant from trivial harms." *Id.* at 68. The Court explained that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (citation omitted).

Second, the Court used the phrase "reasonable employee," which makes clear that the standard is an objective one, rather than a subjective one. *Id.* The Court explained that using an objective standard "avoids the uncertainties and unfair

18

discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69.

Last, the Court explained that it defined the standard in general terms because the decision as to whether something is an adverse action must be decided by giving some weight to the overall context and facts of each case. *Id.* at 69.

Here, Abdi does not plead facts that plausibly show he suffered any injury that might reasonably dissuade a reasonable worker from making or supporting a charge of discrimination. This Court has previously stated that on its own, a "poor performance rating does not constitute an adverse employment action . . . ." *Wilson v. Miller*, 821 F.3d 963, 968 (8th Cir. 2016). "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Id.* (citation omitted). Abdi cannot make such a showing because he has not alleged anything more than trivial harms.

Abdi notes he received a performance evaluation, which included some comments about his interpersonal communication in the workplace. R. Doc. 1-1, 5(¶ 21). However, Abdi does not plead that he received an overall poor performance rating. He also does not plead that the overall tenor of the comments within the performance evaluation were negative or that he was denied the pay increase

associated with a favorable annual performance review. *Id.* No reasonable worker would consider the comments in this performance review to be retaliatory.

Abdi also states that he was the subject of an employment investigation on April 1, 2021. *Id.* at ¶¶ 15, 22. Abdi acknowledges that the investigation resulted in "acquittal" and that he received an informal "coaching." *Id.* at ¶ 25. Moreover, *after* these events, the County promoted Abdi to a Senior Social Worker role. R. Doc. 1-1, 6(¶ 29). After Abdi was promoted, he passed his probationary period and was certified in the new role, which gave him permanent civil service rights to the higher-level position. R. Doc. 1-1, 6(¶ 30). *See* Minn. Stat. 383B.38, subd. 1 ("No permanent employee in the classified service shall be suspended, demoted, or discharged except for just cause."); *id.* 383B.27, subd. 15 ("'Permanent employee' means an employee in the classified service who has satisfactorily completed a probationary period."). These facts demonstrate that the performance review and alleged employment investigation in early 2021 did not negatively impact Abdi's future career prospects, nor did they put Abdi at an employment disadvantage.

It simply does not follow that a reasonable worker under these circumstances would be dissuaded from making or filing a charge of discrimination as described in *Burlington Northern*. In fact, based on Abdi's own pleadings, he *did* feel comfortable filing a charge of discrimination after these events occurred. R. Doc. 1-2, 1; *see also* R. Doc. 1-1, 6(¶ 28). Abdi also cannot show that either the comments

20

in the performance review or being subject to an employment investigation for which he was ultimately acquitted negatively impacted his career at the County in any way, as he was promoted afterwards. R. Doc. 1-1, 6(¶ 29) He has also subsequently been accommodated *after* all of these events took place: he was given a stand-up desk and an alternative assignment with ADA accessible buildings. Abdi's own Complaint states that he requested his office location be made ADA accessible with door push buttons and bathroom modifications. R. Doc. 1-1,8(¶ 46). Abdi then states the County spent $90,000 to make these modifications. *Id.*

Furthermore, Abdi cannot on his pleadings make a causal showing that any events he found subjectively adverse after his initial request for accommodation and subsequent EEOC charge were motivated by any discriminatory animus because after his promotion, he had a new supervisor and management team. R. Doc. 1-1, 6(¶ 32) (Abdi has a new supervisor in April of 2022).

Last, as described above, the "reasonable employee" standard outlined in *Burlington Northern* is an objective one, not a subjective one. *Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 67-68. The Eighth Circuit has stated that actions like "supervisor's warnings" do not necessarily "avoid the triviality pitfall" because retaliation "must produce some 'injury or harm.'" *See AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) "[P]etty slights and snubs," without additional facts that show how "a reasonable employee in [his] shoes would be dissuaded from

21

complaining are akin to the sort of trivial harms that do not rise to the level of retaliation." *See Weger v. City of Ladue*, 500 F.3d 710, 728 (8th Cir. 2007) (internal quotation and citation omitted).

Abdi's only pleaded allegation that could rise above the triviality pitfall is that despite being promoted, he alleges he suffered a $4,000 income loss. R. Doc. 1-1, 6(¶ 29). However, it was Abdi's own decision making that caused the income loss, not the County's actions. R. Doc. 1-1, 6(¶ 29) (Abdi transferred to Long Term Support Services as a Senior Social Worker on October 11, 2021.) Abdi attributes the $4,000 annual income loss to the impact his promotion had on the amount of time he was able to work in his second part-time job with the County, presumably due to a different schedule in the new role impacting his availability in his second job. R. Doc. 13, 7. However, the promotion was voluntary and it benefitted Abdi's career at the County. There is no allegation that the promotion itself came with a lower pay rate.

While it is true the District Court did not apply the *Burlington Northern* standard when analyzing the facts of this case, this Court can affirm on any ground supported in the record. *Carlsen*, 833 F.3d at 910. The District Court's dismissal of Abdi's ADA retaliation claim does "not affect any party's substantial rights" and is not ground for "vacating, modifying, or otherwise disturbing a judgment or order" because the outcome does not change when applying the *Burlington Northern*

standard. F ED. R. C IV. P. 61. Furthermore, vacating the order would be against the interest of the court and the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding."[1] F ED. R. C IV. P. 1. As a result, the County respectfully requests that this Court affirm the District Court's dismissal of Abdi's ADA retaliation claim.

## IV. The District Court did not err when it dismissed Abdi's Title VII race discrimination claim for failure to plausibly state a claim.

To establish a prima facie case of employment discrimination under Title VII, a plaintiff was required to show: "1) [he] belonged to a protected class; 2) [he] was qualified to perform [his] job; 3) [he] suffered an adverse employment action; and 4) [he] was treated differently from other similarly situated" employees out of his protected class. *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). In *Muldrow*, the Supreme Court rejected the idea that an adverse action – the third prima facie element – requires "significant" harm, rather it is enough to show that the employee was injured in some form by an employer's decision that was motivated by discriminatory animus. *See Muldrow*, 144 S. Ct. 975 at n.2.

---

[1] Alternatively, if the Court decides that it is necessary for the District Court to analyze the *Burlington Northern* standard in the first instance, the Court could remand this claim to the District Court for additional analysis of the County's Rule 12 motion.

Appellate Case: 24-1393     Page: 30     Date Filed: 07/10/2024 Entry ID: 5412174

Here, Abdi's race discrimination claim does not survive the standard set out in *Muldrow* because he does not allege any harm that he experienced that could be attributed to alleged race discrimination by the County. Abdi's Complaint makes only a few references to race. Abdi states a white employee complained about him to a supervisor. R. Doc. 1-1, 5(¶ 20). Abdi then states his supervisor did not listen to his concerns about the white female employee. *Id.* at ¶ 23. He then states he was the subject of a disciplinary investigation. *Id.* at ¶ 24. However, he admits the investigation resulted in "acquittal." *Id.* at ¶ 25. Afterwards, Abdi states that the County refused to "recuse" him from the white female employee. R. Doc. 1-1, 6(¶ 26). Abdi cannot connect this event with another employee to any discriminatory action the County has taken. By his own words, Abdi and this employee had some sort of disagreement about a work-related communication. *See* R. Doc. 1-1, 5(¶ 18). There is no allegation that race had anything to do with their disagreement. Abdi states after his disagreement with the white female employee, he was then subject to an employment investigation which he alleges was "for advocating for reasonable accommodation under protected right." *Id.* at ¶ 24. However, he does not connect this situation to his race or his work disagreement with the white female employee, rather he connects it to his disability.

Later on, Abdi states that the County hired a white female social worker on December 5, 2022. R. Doc. 1-1, 8(¶ 49). He also states that the County allowed a

black social worker to transfer as well as return to her morning shift in February of 2023. *Id.* at (¶¶ 49-51). Aside from these references to race, Abdi pleads nothing else about his race in his Complaint.

Additionally, Abdi does not plead that he is similarly situated to any of the white employees who are outside his protected race class. The Eighth Circuit has stated that the "test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014). In other words, comparator employees must be "similarly situated in all relevant respects." *Ingram v. Arkansas Dep't of Corr.*, 91 F.4th 924, 928 (8th Cir. 2024) (quoting *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014)). Abdi does not plead anything about the situation of these other employees. He does not provide pleadings which explain what type of social work they do for the County, what seniority levels they may have, what duties they are responsible for, or even if they report to the same supervisor he does.

Without facts to support that Abdi was similarly situated to employees outside of his class who were allegedly treated more favorably, there is nothing to support an inference of discrimination. *See Robinson v. Am. Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014) (affirming dismissal where plaintiff failed to show that similarly situated employees were treated differently). Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 632 (8th Cir. 2016) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 941 (2015)).

Furthermore, Abdi cannot attribute *any* injury to these situations. He does not allege that the entirety of his performance review was negative. He does not allege that he did not receive the pay increase associated with a favorable performance review. He does not allege that the employment investigation he references was substantiated against him. To the contrary, Abdi was promoted and certified in his role *after* all of these things happened. He does not plead any facts that would support any causal connection of discrimination based on his race to *any* harm. Abdi does plead that he suffered a $4,000 income loss, but as described above, he does not attribute that loss to the County's decision-making, but his own.

Due to the above, the District Court did not err when it dismissed Abdi's Title VII race discrimination claim and this Court should affirm its dismissal.[2]

---

[2] Alternatively, if the Court decides that it is necessary for the District Court to analyze the new *Muldrow* standard in the first instance, the Court could remand this claim to the District Court for additional analysis of the County's Rule 12 motion.

Appellate Case: 24-1393    Page: 33    Date Filed: 07/10/2024 Entry ID: 5412174

## CONCLUSION

For all these reasons, the County respectfully requests that this Court affirm the District Court's order dismissing Appellant's complaint in its entirety. The District Court reached the correct conclusions based on the facts alleged in the Complaint, and the result is no different when applying the standards set forth in the amicus brief. Alternatively, if this Court determines that the District Court must analyze the claims under the new legal standards in the first instance, the County respectfully requests that the case be remanded for the District Court to reconsider the County's Rule 12 motion based on the new standards.

Respectfully submitted,

July 9, 2024

MARY F. MORIARTY

Hennepin County Attorney

*s/Bethany M. Belle Isle*

Bethany M. Belle Isle (#0399161)
Assistant Hennepin County Attorneys
A-2000 Government Center
300 South Sixth Street
Minneapolis, MN 55487
Telephone: (612) 540-9050
Beth.belleisle@hennepin.us

*Attorney for Appellee*

27

## CERTIFICATE OF COMPLIANCE

I hereby certify the Brief of Appellees complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,415 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

The Brief of Appellees complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is prepared in proportional spaced 14-point font typeface using plain, roman style font.

The Brief of Appellees complies with this Court's Rule 28A(h) because it has been scanned for viruses and it is virus-free.

Dated: July 9, 2024            MARY F. MORIARTY

Hennepin County Attorney

*s/Bethany M. Belle Isle*
Bethany M. Belle Isle (#0399161)
Assistant Hennepin County Attorney
A-2000 Government Center
300 South Sixth Street
Minneapolis, MN 55487
Telephone: (612) 540-9050
Beth.belleisle@hennepin.us

*Attorney for Appellee*

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2024, I electronically filed the foregoing

BRIEF OF APPELLEE with the Clerk of the Court for the United States Court of

Appeals for the Eighth Circuit by using the CM/ECF system.  Participants in the

case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF

users. I have mailed the foregoing document by First-Class Mail, postage prepaid,

or have dispatched it to a third-party commercial carrier for delivery within 3

calendar days, to the following non-CM/ECF participants:

Sharmarke Y. Abdi
P.O. Box 1136
Maple Grove, MN 55311
*Appellant*

Tovah R. Calderon
Jonathan L. Backer
Attorneys
U.S. Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
*Amici*

29

Karla Gilbride
Jennifer S. Goldstein
Anne Noel Occhialino
Georgina C. Yeomans
Equal Employment Opportunity Commission
Officer of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
*Amici*

Dated: July 9, 2024                    MARY F. MORIARTY

                                       Hennepin County Attorney

                                       *s/Bethany M. Belle Isle*
                                       Bethany M. Belle Isle (#0399161)
                                       Assistant Hennepin County Attorney
                                       A-2000 Government Center
                                       300 South Sixth Street
                                       Minneapolis, MN 55487
                                       Telephone: (612) 540-9050
                                       Beth.belleisle@hennepin.us

                                       *Attorney for Appellee*